## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

RAFAEL GALÁN-OLAVARRIA

    Petittioner,

    v.

UNITED STATES OF AMERICA

    Respondent.

**Civil No. 17-1263 (ADC)**
**[related to Criminal No. 07-547-17 (ADC)]**

## OPINION AND ORDER

Pending before the Court is Rafael Galán-Olavarria's ("petitioner" or "Galán") motion for *habeas* relief. **ECF No. 1**. On November 21, 2018, the government opposed. **ECF No. 15**. Petitioner replied. **ECF No. 18**. For the reasons explained below, petitioner's motion is **DENIED,** and his claims are **DISMISSED WITH PREJUDICE**.

### I.    Background

The facts of this case were laid out by the First Circuit in *United States v. Lanza*, 799 F.3d 134 (1st Cir. 2015). This Court recites the facts that are relevant to a better understanding of the factual and procedural background of this case, which deals with a drug trafficking operation at the Jardines de Sellés Housing Project in San Juan, Puerto Rico ("Sellés"). On January 26, 2000, the leader of that operation, Luis Daniel Rivera, was murdered and Alberto Carrillo-Morales ("Alfalfa") replaced Rivera as leader. Alfalfa later took over the operation at the El Prado Housing Project, Las Flores - a housing project in nearby Aibonito -, and the Liborio Ortiz

Housing Project. Galán joined Alfalfa's operation as a seller at Sellés. Alfalfa's expansion into El Prado enabled Galán to become the owner of a brand of marijuana at El Prado. Galán enlisted José Serrano-Ayuso ("Serrano") to serve as his runner. According to the evidence, the two met nightly at Galán's apartment, where Serrano would deliver money and the men would count it together.

Around May and June of 2007, the San Juan Metro Strike Force began an investigation into Alfalfa's operation. As part of that investigation, agent Jorge L. Cedeño ("agent Cedeño") surveilled the El Prado apartments. Eventually, agent Cedeño submitted an affidavit detailing his observations, and a judge of the San Juan Municipal Court approved a search warrant for Galán's apartment. During the search, the police recovered: a police radio scanner that was turned on; a firearm cleaner; a loaded AK-47 with two magazines; $1,064 in cash; two social security cards; pressure-sealed baggies; and stickers/seals depicting Osama Bin Laden's face. The officer also found registrations for three cars and a driver's license. One of the registrations matched a vehicle seen in video surveillance at a Sellés drug point.

Based on this investigation, a federal grand jury indicted 121 defendants, including Galán, charging conspiracy to possess with intent to distribute drugs (Count I); aiding and abetting possession with intent to distribute heroin, crack cocaine, cocaine, and marijuana (Counts II-V); and conspiracy to possess a firearm during and in relation to drug trafficking (Count VI). Galán was also charged as being a felon in possession of a firearm (Count VII). Galán was tried jointly with two co-defendants; the remaining co-defendants plead guilty.

During trial, the government submitted physical evidence (such as the items found in Galán's apartment), the testimony of law enforcement officers (such as agent Cedeño) and, as noted by the First Circuit, perhaps most importantly, the testimony of three co-conspirators: Wilberto Pizarro-Santiago ("Pizarro"), Serrano, and José Díaz-Martínez ("Díaz"). After an eighteen-day trial, a jury returned verdicts finding Galán guilty on the conspiracy charge (Count I), the substantive marijuana charge (Count V), the firearm conspiracy charge (Count VI), and the felon in possession of a firearm charge (Count VII), and the Court sentenced him to 405 months. **Crim. No. 07-547-17**, **ECF No. 5422**.

Galán and his co-defendants timely appealed arguing what the First Circuit described as a "laundry-list of claims ranging from minor evidentiary concerns to broad assertions of cumulative error." *Lanza*, 799 F.3d at 140. After finding that only five issues warranted in depth analysis and discussion, including Galán's challenge to the search of his apartment, the First Circuit affirmed Galán's and co-defendants' convictions and sentences. The Supreme Court denied *certiorari*. *Galán-Olavarría v. United States*, 136 S. Ct. 920 (2016). This petition then followed.

## II.     Legal Standard

The Court liberally construes *pro se* petitions, though "pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). To succeed on a claim that counsel was constitutionally ineffective, "[p]etitioner must first show that his counsel's 'performance was deficient,' and he must then

show that 'the deficient performance prejudiced the defense.'" *Williams v. United States*, 858 F.3d 708, 715 (1st Cir. 2017) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

"The first requirement necessitates a demonstration that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* (citation and internal quotation marks omitted). Nonetheless, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (citations and internal quotation marks omitted). This standard is "highly deferential" and courts "indulge a strong presumption that . . . under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Walker v. Medeiros*, 911 F.3d 629, 633 (1st Cir. 2018) (citing *Strickland*, 466 U.S. at 689).

The second prong requires that defendant "show that the deficient performance prejudiced the defense, which requires proof that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jaynes v. Mitchell*, 824 F.3d 187, 196 (1st Cir. 2016). Failure to prove either prong of an ineffective assistance claim is fatal to the claim. *United States v. Caparotta*, 676 F.3d 213, 219–20 (1st Cir. 2012). The petitioner bears a heavy burden of proof in this regard. *See Argencourt v. United States*, 78 F.3d 14, 16 (1st Cir. 1996). However, "a reviewing court need not address both requirements if the evidence as to either is lacking." *Sleeper*, 510 F.3d at 39. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

### III.    Analysis

Galán moves to vacate his conviction and sentence exclusively on ineffective assistance of counsel grounds. He asserts that his trial counsel, attorney Frank D. Inserni-Milam ("counsel Inserni"), (1) failed to pursue a police corruption defense to show that he was "framed" by police; (2) failed to inform him about his right to testify; (3) failed to file an administrative complaint against PRPD agent Cedeño and his supervisor, Sergeant Iván Bahr ("Sgt. Bahr"); (4) failed to properly prepare firearms expert Anibal González and obtain a written expert report prior to trial; (5) failed to call private investigator Alvin Aponte as a witness; and (6) failed to call Héctor Delgado as a witness. *See* **ECF No. 1**.

The gist of Galán's petition is premised on the proposition that had counsel Inserni informed him about his right to testify, he would have testified during trial, rebutting the government's witnesses' testimonies and showing that he was framed by corrupt police officers. According to Galán, agent Cedeño, with his supervisor Sgt. Bahr's approval, provided false information in a sworn statement to obtain a warrant to search his residence and frame him with evidence planted by the police during the execution of the warrant (palm or fingerprints on an AK-47 magazine). In support of such contention, Galán offers an extensive discussion of various' witness testimony comingled with his own impressions as to the evidence and his potential testimony had he testified during trial.

Petitioner essentially urges this Court to believe his version of the facts, ignoring that at this juncture, his request for relief under §2255 does not equate a direct appeal or *de novo* review

of the evidence. This Court's review is limited to whether his counsel's assistance was ineffective, and if any purported ineffective assistance was prejudicial and would have rendered a different result. With this in mind, we will discuss each argument in turn.

### a. Trial counsel did not pursue a police corruption defense

Galán alleges that his counsel was ineffective for failing to pursue a defense based on police corruption to demonstrate that he was "framed" by PR Police. Nonetheless, Galán's argument is contradicted by his own admission that, counsel Inserni "tried to undermine the case against [petitioner] with allegations of police corruption but …the Court stopped counsel from bringing out police corruption each and every time counsel attempted to advance such allegations." **ECF No. 18** at 3.[1] Galán also concedes that counsel Inserni "pursued evidence at trial that Sgt. Bahr was likely to have participated in the drafting of [agent Cedeño's] sworn statement," in an attempt to show that petitioner was framed. **ECF No. 1** at 21. However, such attempts were halted by the Court.[2]

---

[1] Curiously, Galán himself retracted some of his accusations against PR Police that, in an attempt to frame him, they "lifted" palm prints off one of the AK-47 magazines allegedly found in his apartment and then sent that palm print to the FBI for analysis. *See* **ECF No. 2**. Via motion at **ECF No. 2**, Galán acknowledged that the PR Police did not lift a palm print, but instead performed a super glue procedure to preserve any fingerprints potentially left on the firearm. **ECF No. 2** at 1-2. The FBI later examined the firearm and the FBI expert fingerprint witness determined and testified that Galán's palm print was found on one of the AK-47 magazines. *Id.* **ECF No. 2** is **NOTED**.

[2] During pretrial proceedings and trial, counsel Inserni repeatedly attempted to introduce evidence regarding the search of Héctor Delgado's apartment at El Prado by PR Police on the same date that Galán's apartment was searched by the Metro Strike Force. Namely, counsel Inserni relentlessly mentioned or made references to Delgado and the PR Police agents who searched his apartment even though those officers were not part of the investigation or the Metro Strike Force involved in the search and seizure of Galán's apartment. Counsel Inserni contended that the search of Galán's and Delgado's apartments were part of a joint scheme by the PR Police and Metro Strike Force; mainly, he sought to introduce evidence of police corruption and the indictment of PR police involved in the search of Delgado's apartment. The Court noted, however, that such evidence was not admissible since the search of Delgado's apartment was not related to this case; the PR Police and Metro Strike Force acted independently based

Petitioner's argument is also belied by the record. It is evident that counsel Inserni persistently pursued the police corruption defense through various means and at different times during the criminal proceedings. As the government points out, "[i]t was precisely the defense's strategy to undermine the credibility of agent Cedeño to suppress all physical evidence tying Galán to the conspiracy." **ECF No. 15** at 8-9. He filed numerous motions requesting production of *Jencks*, *Giglio*, *Kyles* and *Brady* material, wherein among other things, he sought the production of any administrative complaints against agent Cedeño and Sgt. Bahr and any testifying agents. *See* **Crim. No. 07-547-17**, **ECF Nos. 911, 1711, 1869, 1967, 2206, 2235, 2429, 2534, 2785, 3120, 3337, 3768, 3825, 3953**. He also actively pursued the production of agent Cedeño and Sgt. Bahr's administrative records, and indeed such requests were granted by the Court. *See id.,* **ECF Nos. 1360, 1384, 1388, 1537, 1784, 2243, 3727, 3597, 3677**. Counsel Inserni further requested, and the Court granted, his repeated requests for the appointment of private investigator Aponte to investigate, among others, agent Cedeño's version of the facts pertaining to the sworn statement used to obtain the warrant to search petitioner's home. *See id.,* **ECF Nos. 1247, 1526, 1595, 1959, 2952, 3653**.

Counsel also filed a motion pursuant to *Franks v. Delaware,* 738 U.S. 154 (1978), requesting the suppression of the AK-47 seized from petitioner's home following the search warrant based

---

on different investigations. Therefore, any evidence regarding the search of Delgado's apartment and the subsequent indictment of any police officers involved in that search was not relevant in this case nor could be introduced to support a police corruption defense. *See* **Crim. No. 07-547-17, ECF No. 3911** at 5-10; **ECF No. 4002**.

on agent Cedeño's purportedly falsified sworn statement. **Crim. No. 07-547-17**, **ECF No. 1328**; *see also* **ECF Nos. 1487, 2352, 2825.** Petitioner essentially averred that agent Cedeño and Sgt. Bahr framed him via false statements that led to the search of his home and seizure of evidence planted by the police. Magistrate Judge Justo Arenas held a *Franks* hearing, during which he heard the testimony of court appointed private investigator Aponte, agent Cedeño and El Prado resident Marilyn Vega-Morales, and as a result of which he issued a Report and Recommendation, recommending denial of petitioner's motion to suppress. *Id.,* **ECF Nos. 1489, 1511, 1587, 1709, 1963, 2236, 2286.** The Court adopted such recommendation and denied petitioner's counsel's repeated arguments and attempts for reconsideration. *Id.,* **ECF No. 2825, 3509, 3745, 3352, 3746.**

Additionally, a review of the trial transcripts shows that counsel Inserni continually asserted the defense of police corruption despite the Court's prior rejection of such defense, to the point where the Court admonished him and instructed counsel Inserni to abide by its ruling disallowing the mention of corrupt agents in furtherance of the police corruption defense.[3] *See* **Crim. No. 07-547-17**, **ECF No. 3935** at 103-105. Namely, the following instances show counsel Inserni's repeated assertions regarding purported police corruption:

COURT: Those are two separate and distinct things. Are you sure you are going to start pulling out things about corrupt agents?

---

[3] Addressing Galán's argument on appeal that this Court intervened on behalf of the prosecution and "badgered" counsel Inserni, the First Circuit dismissed such claims noting that counsel Inserni "asserted a plethora of objections (often repeatedly so and after the judge had made her rulings clear) and "…regularly attempted to relitigate matters despite the judge's firm rulings…" *Lanza-Vázquez*, F.3d at 143-44.

MR. INSERNI: I am going to stop here. **ECF No. 3888** at 123.

COURT: Let me say this and I want to have this rule clear. I don't want you, because I know the numerous motions that you kept filing over the process in which there was a determination about the Franks hearing and you were asking for records of sergeant Ba[hr] and some other officers that were present. I don't want you to go into impeaching this witness with sergeant Ba[hr]'s statement, with what sergeant Barr stated and issues of corruption regarding sergeant Barr. If there are issues relative to impeachment with this witness you can use that. But anything that you can use to impeach Ba[hr]r because of his criminal record or statement against him, is not to be used to impeach Mr. Cedeño. **ECF No. 3900** at 6-7.

COURT: I don't want and I will not allow you to impeach this witness with any administrative complaint or records of sergeant Ba[hr]. Because he is a member of the unit, and he has to follow instructions of his sergeant as any other member. Because one sergeant had engaged in disciplinary actions or received disciplinary action that does not mean the unit is corrupt. If you have anything to tie one thing to the other you can explore that and tell me. But to use the complaints against Barr to impeach this witness, sorry. Let's move on. **ECF No. 3900** at 10.

MR. INSERNI: What I am trying to bring to the jury's attention and Your Honor should allow me. All this happens on the same day and one of the police officers involved in the arrest is the person involved in the same type of activity was later charged. And I have laid some foundation that there is some police corruption going on in this case. **ECF No. 3902** at 41-42.

MR. INSERNI: I ask for a mistrial, I perceive that the Court is impeding me from of continuing in my line that this is a joint operation, and it is based on a good faith basis which I showed you the 302 yesterday. I will submit it for the record. I am being precluded of giving an entire scenario to the jury.

COURT: I have allowed you to inquire about agents that were present pursuing your theory of joint venture. However, I have told you one, none of this is part of the direct so to that extent you are limited somehow and I am being lenient in allowing you to do that, because I can cut it. I am going into the details of saying four arrestees, Héctor Delgado fine. I am allowing but if you keep misleading by saying, and I know that your theory is that agent Ba[hr] is a corrupt agent, but so far you have inquired about him being the supervisor, that is established and you have been walking on the line even with the question of agent Ba[hr], you just went there because agent Ba[hr] told

you. The agent said he went because of the search warrant, it could have been anyone. **ECF No. 3911** at 10-11.

COURT: Mr. Inserni the government has been under instructions to not raise or bring up anything on police corruption. **ECF No. 3917** at 135.

COURT: …because of the charges originally filed against Delgado were dismissed, second, that it was never dropped under the instructions or part of the Federal investigation, third, has not been brought as the government case in chief, fourth, stipulation between parties that the incident concerning police corruption were to be avoided and not brought as part of the record. And Mr. Inserni you are trying to bring everything through the back door… And no mention about the issues of police corruption…[m]y ruling is on the record, your objection is on the record. **ECF No. 3935**, at 26-27.

COURT: Now you're going into information concerning separate investigations of separate things and events concerning alleged corruption of officers that are not here and not part of this investigation. **ECF No. 3935** at 100.

Even more, on day fifteen of trial, counsel Inserni insistently argued there was police corruption on the record and attempted to call Héctor Delgado as a witness to support such proposition. **Crim. No. 07-547-17**, **ECF No. 4002**. The Court strenuously reminded counsel that he continued to pursue such defense since the *Franks* hearing, despite the denial of his *Franks* motion, and ignoring the stipulation among the parties as well as the Court's holding that the search of Delgado's apartment and any testimony pertaining to police corruption would not be raised at trial. *Id.*; *see also* **Crim. No. 07-547-17, ECF No. 3911** at 5-10. Also, on cross-examination of the government's informant Gloria Rodríguez-Torres, counsel Inserni posed questions relating to her allegations about corrupt officers entering an apartment, taking money, and a

pistol without arresting anyone. *See* **ECF No. 15** at 9 (citing **Crim. No. 07-547-17, ECF No. 3888** at 126).

Thus, the record defeats petitioner's claim, and shows that the proffered defense simply did not prevail. It is well settled that counsel cannot be deemed ineffective for arguing a defense that proved unsuccessful. *Strickland*, 466 U.S. at 689-90. Consequently, this Court finds that counsel Inserni was not ineffective on this issue.

**b. Trial counsel failed to file an administrative complaint against officers Cedeño and Bahr**

In his 2255 motion, petitioner argues that had counsel Inserni filed administrative complaints against agent Cedeño and Sgt. Bahr, he would have obtained both officers' records, information about a pattern of wrong-doing, and been able to show they acted illegally in this case. **ECF No. 1** at 53. Specifically, petitioner contends that procuring information about agent Cedeño and Sgt. Bahr's prior misconduct was relevant to the police corruption defense.

The government opposed, noting that petitioner does not pinpoint any authority imposing a duty upon counsel to file administrative complaints against the officers. **ECF No. 15** at 12. Even so, such complaints would not affect the outcome of the trial or have any impeachment value. Moreover, as the government correctly points out, counsel Inserni filed several motions requesting information regarding the government's witnesses' records including the agents in question, which he obtained. As such, petitioner's argument is unfounded.

The Court agrees on all fronts. As discussed above, the police corruption defense was actively pursued by counsel Inserni and duly rejected. Also, counsel Inserni repeatedly requested, and ultimately obtained all administrative records requested as to agent Cedeño and Sgt. Bahr.[4] **Crim. No. 07-547-17**, **ECF Nos. 1360, 1384, 1388, 1537, 1784, 2243, 3727, 3597, 3677**. Moreover, absent an adverse ruling, an administrative complaint would have been worthless for impeachment purposes. Most importantly, the filing of administrative complaints would not have affected the outcome of the trial. Consequently, petitioner's claim of ineffective assistance on this front similarly fails.

### c. Trial counsel did not inform petitioner about his right to testify

Galán alleges that counsel Inserni did not "properly" advise him about his right to testify on his own behalf. **ECF No. 1** at 53; **ECF No. 18** at 2. He proffers he "did not understand that right at all", and despite believing his testimony was necessary at trial, he "assumed it was entirely up to Mr. Inserni whether or not he testified." **ECF No. 1** at 53. It is well settled that a defendant has a "fundamental constitutional" right to testify in his own defense if he so wishes, and that right must be "unfettered," and "may not be waived by counsel acting alone." *Pabón-Mandrell v. United States*, 91 F. Supp. 3d 198, 212 (1st Cir. 2013) (citing *Owens v. United States*, 483 F.3d 48, 58 (1st Cir. 2007) (overruled in part by *Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017)). "A claim that counsel interfered with that right implicates the right to effective assistance of

---

[4] In fact, at **ECF No. 1583**, this Court noted that Sgt. Bahr was not a government witness for purposes of the Franks hearing, his administrative case file did not have entries relevant to this case, and there were no administrative complaints filed against agent Cedeño.

counsel, that must be evaluated under Strickland's two-prong test." *Id*. The First Circuit noted that "when evaluating Petitioner's claim under Strickland, the court shall inquire whether it is reasonably probable that the defendant's testimony would have changed the outcome of the trial in his favor." *Id*.

The government points out that even assuming his proposition that counsel failed to advise him about his right to testify is true, Galán must still prove prejudice. *See McKenzie v. United States*, 12-CV-3221, 2015 U.S. Dist. LEXIS 148558, *26-27 (E.D.N.Y. Nov. 2, 2015) (a petitioner who has been denied the right to testify must still establish that his failure to testify prejudiced his case.); *Lambrix v. Singletary*, 72 F.3d 1500, 1508 (11th Cir. 1996) ("a defense attorney renders ineffective assistance if he fails to adequately inform his client of the right to testify, and that failure prejudices the defense"). That is, Galán must show that his testimony would have changed the outcome of the trial. Therefore, "[d]emonstrating that he would have testified is only half the battle." *Fisher v. United States*, 638 F. Supp. 2d 129, 141 (D. Mass. 2009). Petitioner "must also show that his hypothetical testimony would have so altered the trajectory of his trial such that this Court can no longer be confident in the trial's outcome." *Id*.

The trial transcripts, record, and petitioner's proposed testimony as proffered in his petition provide this Court with all that it needs to determine whether it was reasonably probable that petitioner's testimony would have changed the outcome. *Franklin v. United States*, 227 Fed. Appx. 856, 860 (11th Cir. 2007). Based on a thorough review of the same, this Court finds that petitioner's testimony would not have rendered a different outcome.

As the government points out, if petitioner had testified, he would have opened the door to the introduction of his prior convictions and admissions as impeachment material, which would have been prejudicial to his defense.[5] *See* **Crim. No. 07-547-17, ECF No. 5220** at 38-41. Additionally, he would have subjected himself to cross-examination as to the evidence against him, including testimonial evidence regarding his involvement in the conspiracy, the seizure of weapons from his apartment, and incriminating evidence found at his apartment during the search.[6] *See United States v. Barron*, 2006 U.S. Dist. LEXIS 82907, *43 (in assessing prejudice, the court weighed what petitioner would have testified to against what he did not intend to testify about, finding that the jury would have been unlikely to put much stock into what the court characterized would have been petitioner's self-serving denials). In *Concepción v. United States*, 181 F. Supp. 2d 206, 225-226 (E.D.N.Y. 2002), the court noted

> [a]ny reasonably prudent criminal defense attorney would have advised Concepción that he could not limit his testimony to only certain matters. Once he took the stand Concepción could be cross-examined on any relevant issue with regard to any charge in the indictment. That means that Concepción would have been questioned in detail and at length about his massive heroin and cocaine drug dealing organization; the millions of dollars collected; the shootings, beatings and

---

[5] For example, when confronted with the possibility of agent Negrón testifying about some of Galán's admissions during his post arrest interview, counsel Inserni withdrew his line of questioning: AUSA Castellon: Then I have to ask Mr. Negron about Mr. Galán's allegation about police corruption and what did he do if anything, regarding Mr. Galán saying that he gave a police officer guns and money in exchange. Because at the time Your Honor, when we were going to the admissions of Galán we were not only we were careful regarding what was his admission and we didn't go into any allegations made by Galán because it was the attorney who insisted we would not go into any extent into his testimony and admission of any illegal actions regarding the police officers requesting and him handing money or guns in exchange for being released or released in other situations. …
Mr. Inserni: After reconsideration I will withdraw the question and go to another subject. **Crim. No. 07-547-17**, **ECF No. 3935** at 101.

[6] As explained above, petitioner's attempts to exclude the weapon seized at his apartment were denied by the Court. **Crim. No. 07-547-17**, **ECF Nos. 1489, 1511, 1587, 2263, 2286, 2825, 3509, 3745, 3352, 3746.**

torture of members and competitors; and the voluminous detailed records of the receipts and expenditures of the drug dealing with the names of participants boldly set forth. With reasonable certainty, Concepción's testimony would have been a veritable disaster to his defense and a field day for the prosecution.

Additionally, since references to police corruption were not permitted during trial, the court would have similarly disallowed any testimony by petitioner based on mere allegations, presumptions and his belief that he was framed by corrupt police officers. Without question, his testimony would have done more harm than good. *Rega v. United States*, 263 F.3d 18, 22 (2nd Cir. 2001) (finding that counsel's failure to properly advise defendant of his right to testify did not prejudice defendant where court found that defendant's testimony would have done more harm than good).

Most importantly, petitioner's argument hinges on the credibility of his testimony vis a vis the physical and testimonial evidence against him. Essentially, petitioner avers he would have shown that all the government's witnesses were lying. Thus, his testimony would have been subject to a credibility determination and a weighing and balancing against the aggravating factors and evidence presented in the case. *See Hall v. Carpenter*, No. 05-1199, 2015 U.S. Dist. LEXIS 39948, *81 (W.D. Tn. Mar. 30, 2015). The Second Circuit denied an ineffective assistance claim based on trial counsel's alleged failure to advise defendant of his right to testify because the effect of the petitioner's testimony was "wholly dependent on either his credibility or on the incredibility of the witnesses against him." *Rega*, 263 F.3d at 22. In so holding, the Court highlighted that any probability of an acquittal must be based on an assessment "that the jury

would have credited his testimony, notwithstanding the substantial evidence against him," *Id.* Since the government in *Rega* had presented ample evidence of defendant's involvement in the charged offenses, if defendant had taken the stand, "the probability of a conviction would have increased because his testimony would have been severely undermined by impeachment evidence." *Id.* Petitioner suffers a similar fate here.

Petitioner has no smoking gun or exculpatory evidence. Contrarily, the evidence against him was overwhelming. The government submitted police agents' testimony evidencing the search of Galán's apartment, the evidence obtained as a result of the search, evidence that Galán's palm print was on the seized weapon, and co-conspirators' testimony implicating Galán in actions partaken in furtherance of the drug trafficking organization, drug trafficking, and the possession of firearms. *See Franklin*, 227 Fed. Appx. at 860 ("[t]he evidence of Franklin's guilt was overwhelming, with co-conspirator testimony directly implicating him in the crimes and independent corroborating evidence, including telephone records and taped telephone conversations in which Franklin and a co-defendant discussed the drug smuggling operation"); *Concepción v. United States*, 181 F. Supp. 2d 206, 226 (E.D.N.Y. 2002) (finding that even if counsel prevented petitioner from testifying, there was no prejudice since "[t]he evidence of [petitioner's] guilt that the Government placed before the jury, consisting of eyewitnesses, co-conspirators' testimony and damning exhibits was overwhelming."); *Halo v. U.S.*, No. 06-CV-5041, 2007 U.S. Dist. LEXIS 97135, 2007 WL 1299158, at *3 (E.D.N.Y. Apr. 30, 2007) (finding petitioner's failure to testify did not result in prejudice where three witnesses testified against

petitioner); *McKenzie v. United States*, 12-CV-3221, 2015 U.S. Dist. LEXIS 148558, *31 (E.D.N.Y. Nov. 2, 2015) ("the government presented ample evidence of petitioner's guilt at trial, including recorded telephone conversations between petitioner and a cooperating witness and the testimony of law enforcement and cooperating witnesses regarding petitioner's knowledge of and involvement in the charged offenses"); *Ozsusamlar v. United States*, No. 05-CR-1077, 2012 U.S. Dist. LEXIS 141291, 2012 WL 4473286, at *2, 5 (S.D.N.Y. Sept. 28, 2012) (finding petitioner's failure to testify did not result in prejudice where the government had evidence from a cooperating witness and recorded telephone conversations).

Lastly, in affirming his conviction, the First Circuit expressly addressed the ample physical and testimonial evidence against Galán. *See Morales-Rodríguez v. United States*, 07-2131, 2010 U.S. Dist. LEXIS 92986, *19 (D.P.R. 2010) ("[c]onsidering the First Circuit's holding on appeal, and the overwhelming evidence against Petitioner, this Court fails to see how Petitioner was prejudiced by the errors he claims counsel committed"). Specifically, agent Cedeño's testimony as to the investigation which led to the search of Galán's apartment; Wilberto Pizarro-Colón, who testified extensively about the drug trafficking organization; Serrano, who worked at El Prado as Galán's runner and enforcer; and José Díaz-Martínez, who testified as to the drug trafficking organization and Galán's participation as a drug owner. *See Lanza-Vázquez*, 799 F.3d at 140. The Circuit Court also rejected Galán's argument that agent Cedeño falsified his observations in the affidavit submitted to obtain a search warrant for his residence, noting that the Magistrate Judge found agent Cedeño's testimony during the *Franks* hearing credible, and

Galán provided no evidence to support his belief that Cedeño provided false statements. *Id.* at

141-142. Plainly, as the First Circuit concluded "there was not only significant testimony

respecting his interactions with his runner and his drug ownership, but there was also

substantial physical evidence linking him to the conspiracy." *Id.* at 145.

### d. Trial counsel failed to prepare firearms expert for trial

In his 2255 petition, Galán proffers that counsel Inserni failed to properly prepare firearms

expert González, whose testimony could have shown the impossibility of Serrano's allegation

that he repeatedly tested firearms into a pail inside petitioner's apartment. **ECF No. 1** at 32-36.

He further contends that counsel Inserni merely faxed González portions of Serrano's testimony

that were insufficient to render a report prior to trial. *Id.* He posits that a "properly prepared"

firearms expert "would have been able to show the jury the utter and complete absurdness of

Serrano's testimony" and destroyed his credibility. *Id.* at 35-36. In his reply, petitioner further

argues that "had counsel moved forward with a defense based upon a 'frame up' by corrupt

police, and that Serrano was coached to lie by those corrupt police, destroying Serrano's

credibility about handling and test firing an AK-47 rifle, movant would have testified the corrupt

police 'planted' in his apartment, would have been extremely effective in moving forward with

that defense." **ECF No. 18** at 15.

As the government notes in its opposition, petitioner fails to proffer what his expert

would have testified aside from purportedly impeaching Serrano's alleged testing of the firearm

at petitioner's apartment. Nevertheless, a review of the record reveals that petitioner's

arguments are simply misplaced. Petitioner's convoluted argument, based on several far-reaching assumptions to defeat Serrano's credibility, required the seamless integration of elements which petitioner simply never managed to compile. As noted above, the police corruption defense was disallowed by the Court despite counsel Inserni's repeated attempts to introduce them via numerous pretrial motions and during trial. Prior to trial, the Court also rejected petitioner's attempt to suppress the AK-47 seized from his home. Additionally, the government submitted damming evidence of petitioner's prints on the weapon. Even so, the fact is that petitioner's firearms expert's testimony indeed served to impeach at least a portion of Serrano's testimony.

According to Serrano, he went to petitioner's apartment weekly to clean and test fire an AK-47 rifle in petitioner's apartment. During trial, firearms expert González testified that it was "impossible" to fire an AK-47 inside a pail paint without making noise or causing harm to the shooter. **Crim. No. 07-547-17, ECF No. 4008** at 91. In fact, the Court concluded that "the record in no way or fashion supports an allegation that any weapon was tested within a room." This finding certainly impugned Serrano's testimony and credibility.[7] As such, the Court is baffled by petitioner's allegations that the expert's testimony was insufficient or defective on this issue, more so due to counsel Inserni's purported lack of preparation of the expert. This Court further notes that counsel Inserni contacted the firearms expert for the purpose of impeaching Serrano's

---

[7] It is well known that credibility assessments are a matter left for the jury. Thus, petitioner's assertion that since Serrano was lying about test firing the AK-47 in petitioner's apartment, "it would be reasonable to assume that Serrano was lying about everything he said about [petitioner]" was a matter to be decided by the jury.

testimony after Serrano testified; thus, there was clearly insufficient time to produce an expert report as petitioner suggests and any report would have likely rendered the same result reached here. Consequently, there is no evidence to suggest that counsel Inserni rendered ineffective assistance on this matter.

Lastly, petitioner concedes that "perhaps the most significant piece of evidence" presented against him at trial was his palm print obtained from one of the magazines for the AK-47 rifle seized at his apartment. **ECF No 1** at 25. According to petitioner, his firearms expert would have shown "how easy it is for the police to manipulate fingerprint evidence." *Id*. Such argument is premised on the allegation that the PR Police lifted petitioner's fingerprints from the rifle. Nevertheless, via motion at **ECF No. 2**, Galán acknowledged that the PR Police did not lift a palm print, but instead performed a super glue procedure to preserve any alleged fingerprints potentially left on the firearm. **ECF No. 2** at 1-2. Galán then joins the faulty procedures conducted by the police to the police corruption arguments, which have already been ruled upon.

### e. Trial counsel failed to call private investigator Alvin Aponte as an expert witness and Héctor Delgado as an impeachment witness

Counsel's decisions regarding the calling of witnesses and the extent to which witnesses are to be cross-examined should not be second-guessed and do not, as a general rule, provide a basis for an ineffective assistance claim. *Alicea-Torres v. United States*, 455 F. Supp. 2d 32, 51-52, (D.P.R. 2006) (citing *Barrett v. United States*, 965 F.2d 1184, 1194, n. 19 (1st Cir. 1992)). The First

Circuit has highlighted that, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Barrett*, 965 F.2d at 1193. Therefore, the decision not to call a particular witness is typically a question of trial strategy. *Alicea-Torres*, 455 F. Supp. 2d at 51 (citing *Lema v. United States*, 987 F.2d at 54); *see also United States v. Manon*, 608 F.3d 126, 135, 2010 U.S. App. LEXIS 12860, *21 (holding that counsel's decision to not call witnesses was not a lapse of professional judgment and instead a strategic choice); *Phoenix v. Matesanz*, 233 F.3d 77, 81-83 (1st Cir. 2000) (noting that defense counsel's decision whether to call a particular witness is almost always strategic and observing that "'strategic choices . . . are virtually unchallengeable'" (quoting *Strickland*, 466 U.S. at 690) (emphasis omitted)). In addition, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id*. (citing *Strickland*, 466 U.S. at 695-96).

As a threshold matter, contrary to petitioner's assertion, the Court notes that counsel Inserni moved to subpoena Delgado but such request was denied by the Court. **Crim. No. 07-547-17**, **ECF No. 2519** at 33, 36. He also attempted to call Delgado as a purported impeachment witness during the fifteenth day of trial. *See id.*, **ECF No. 4002**. However, the Court demanded a detailed proffer of Delgado's testimony on the record and warned counsel Inserni that exclusion was likely since Delgado's case was unrelated to the matter at hand. *Id.* at 4. Evidently, the Court

was aware of counsel Inserni's repeated attempts to introduce evidence showing purported police corruption through any means possible.[8]

Moreover, petitioner fails to show how counsel Inserni's decision to not call Aponte as a witness constituted ineffective assistance. Petitioner proffers that Aponte's testimony would have served to impeach agent Cedeño's testimony, by showing that the agent's version of events during the surveillance were impossible. However, aside from the fact that as the government points out, petitioner's conviction rests on abundant evidence aside from agent Cedeño's testimony, most of the issues that Aponte would have purportedly testified were a matter of credibility, raised during the *Franks* hearing and rejected by the Court. Simply put, there was overwhelming evidence against Galán which diminishes the impact of potentially unwise litigation strategies. Thus, Aponte's testimony would not have changed the outcome of the trial.

In conclusion, albeit Galán proffers that counsel provided ineffective assistance, the record clearly shows otherwise. Even throughout his petition, **ECF No. 1**, Galán admits that his counsel: "was a vigorous advocate" (p. 5); "pursued evidence at trial that Sgt. Bahr was likely to have participated in the drafting of that false document [sworn statement]" (p. 21); prepared his expert to show how easy it is for police to manipulate fingerprint evidence (p. 25); called the firearms expert witness during trial (p. 32); and requested and obtained the appointment of a

---

[8] Indeed, petitioner contends that Delgado would have testified about the search of his residence on June 8, 2007 and alleged conversations with agent Cedeño prior to the search, which was irrelevant to the case at hand. *See* **ECF No. 1** at 48-49.

private investigator, Aponte, who investigated agent Cedeno's statements and investigations regarding El Prado housing project and testified at the *Franks* hearings held in 2009 (p. 50).[9]

Galán's petition mainly consists of a rehashing of all the witness testimony presented during the trial, and the reasons he believes discredit each witnesses' testimony and credibility. Admittedly, Galán urges this Court to consider his petition based on the premise that what he alleges "could have actually happened," therefore urging this Court for credibility findings regarding the testimony presented at trial. **ECF No. 1** at 7. This argument, nevertheless, is unavailing at this juncture, in a habeas petition where the only matter at hand is his counsel's purported ineffective assistance. Any credibility findings were made by the jury and later reviewed by the First Circuit, which affirmed Galán's conviction and sentence. Moreover, the government's case against Galán was ironclad and supported by robust physical and testimonial evidence. Accordingly, petitioner's claims of ineffective assistance of counsel are unavailing on all fronts.

## IV.    Petitioner is not entitled to a hearing

An evidentiary hearing on a §2255 ineffective-assistance claim should be held only when the movant asserts facts that, if true, warrant habeas relief. *See Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991). The Court need not hold an evidentiary hearing when the claims are frivolous, are unsupported conclusory allegations, or are contradicted by the record. *Holmes v.*

---

[9] *See also* Transcript of Franks Hearing held on January 15, 2009, **Crim. No. 07-547-17, ECF No. 1633**.

*United States*, 876 F.2d 1545, 1553 (11th Cir. 1989). Consequently, a hearing is unwarranted in this case.

## V.     Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, a "district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant." Rules Governing § 2255 Proceedings, Rule 11, 28 U.S.C.A. § 2255.  To merit a COA, an applicant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner made no such showing here. Thus, the Court will not issue him a certificate. Therefore, a COA is **DENIED**.

## VI.    Conclusion

Considering the above, Galán's petition for habeas relief, **ECF No. 1**, is **DENIED** and the Court **DECLINES** to issue a certificate of appealability. The case is hereby **DISMISSED WITH PREJUDICE**. The Clerk of Court is to enter judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of March, 2020.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**